IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH DANIELS,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| UNITED STATES OF AMERICA,<br>　　　　　Defendant. | NO.  23-2493 |

MEMORANDUM

HODGE, J.                                                                                                  November 25, 2025

In this Federal Tort Claims Act ("FTCA") action, Plaintiff Keith Daniels ("Daniels") asserts a medical negligence claim against the United States for treatment and surgery conducted by employees of the Department of Veterans Affairs (Count I). The United States has moved for summary judgment. (ECF No. 24.) Daniels opposes the Motion. (ECF No. 31.) For the following reasons, the United States' Motion is granted.

I.      BACKGROUND[1]

Daniels is a military veteran who served in Iraq during Desert Storm. (ECF No. 25 ¶ 1.) In or around December of 1990, while on active duty, he injured his right foot when it wedged between two pallets in the pallet yard. (*Id.*; ECF No. 25-3 at 11:13–23.) He experienced intermittent pain in his foot over the years, which began to increase in 2018. (ECF No. 25 ¶¶ 2–3.) That year, he began to receive regular treatment for his foot pain at the Veterans Administration Medical Center ("VA").[2] (*Id.* ¶ 5.) From approximately 2018 until 2021, Daniels underwent

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] Daniels received treatment at VA facilities in both Philadelphia, Pennsylvania, and Wilmington, Delaware. *See, e.g.*, ECF No. 25-2 (VA Wilmington records); ECF No. 25-11 (VA Philadelphia records).

numerous conservative treatments including nonsteroidal anti-inflammatory drugs (NSAIDs), custom and prefabricated orthotics, ankle braces, and more. (*Id.* ¶ 6.) These treatments provided minimal relief. (*Id.*)

In February 2021, the VA conducted an MRI on Daniels' right ankle, which revealed arthritis in the subtalar joint so advanced that the joint was approaching bone on bone. (*Id.* ¶¶ 8–9.) Following the MRI, Daniels met with VA podiatrist Dr. Barbara Porter ("Dr. Porter") regarding treatment. (*Id.* ¶¶ 10–14.) Daniels denies that Dr. Porter discussed any treatment options with him other than surgery. (*Id.* ¶ 14.) Daniels then met with VA podiatric surgeon, Dr. Marjia Ugrinich ("Dr. Ugrinich"), who reviewed his MRI report and agreed he likely suffered from subtalar joint arthritis. (*Id.* ¶¶ 15–17.) Dr. Ugrinich ordered another MRI and an x-ray to evaluate Daniels' posterior tibial tendon, the results of which confirmed he suffered "significant arthritis" in the subtalar joint. (*Id.* ¶¶ 18, 20, 21; ECF No. 25-9 at 2–3.) Dr. Ugrinich "spoke with [Daniels] at length concerning the condition and the possible treatment options in detail." (ECF No. 25-9 at 3.) Daniels provided his informed consent for the surgery. (ECF No. 25-10.) Dr. Ugrinich performed the surgery on the subtalar joint on June 30, 2021. (ECF No. 25 ¶ 26.)

Six weeks after the surgery, Daniels reported to Dr. Ugrinich that he was experiencing pain. (*Id.* ¶ 27.) Dr. Ugrinich referred him to pain management, where he was diagnosed with chronic regional pain syndrome ("CRPS"), which is a pain condition that can arise following trauma to the body, such as surgery. (*Id.* ¶ 28–29.) In January 2022, Daniels sought a second opinion from Dr. Jacob Hanlon ("Dr. Hanlon"), a podiatric surgeon outside of the VA network. (*Id.* ¶ 30.) Daniels testified that Dr. Hanlon informed him that Dr. Ugrinich should have used one screw instead of two screws in the surgery, and the VA should never have performed the subtalar joint fusion. (*Id.* ¶ 31.) Dr. Hanlon testified that he did not tell this to Daniels, and that "it really

doesn't matter what fixation you use, quite frankly, if it's done correctly" regarding the use of two screws versus one screw. (*Id.* ¶ 33; ECF No. 25-16 at 35:17–36:2.) Dr. Hanlon performed an additional surgery to remove the screws placed by Dr. Ugrinich in order to address Daniels' mechanical pain from the hardware in his foot. (ECF No. 25 ¶¶ 34–37.) Following this second surgery, Daniels continued to experience mechanical pain from the staple placed by Dr. Hanlon, leading to Dr. Hanlon conducting an additional surgery to remove the staple. (*Id.* ¶ 37.)

Daniels filed an administrative claim with the assistance of counsel on October 17, 2022. (*Id.* ¶ 39.) Daniels stated the following as the basis for his claim on the claim form:

> Subtalar Fusion which was performed by Dr. Marian Eunice [sic] at Philadelphia's VA Hospital was not done properly. The surgical procedure failed and there was no fusion of the intended bone. The failed surgery was caused by the surgeon's use of two misplaced screws when only one screw was supposed to be used. Mr. Daniel's [sic] had another surgical procedure to remove the old hardware, reconstruct damage caused by the previous surgery, and fuse the other bone.

(ECF No. 25-7 at 2.) Daniels' factual basis for this claim was an expert opinion from Dr. Steven Bernstein. (ECF No. 25-19 at 4.)

The VA investigated the facts and circumstances surrounding Daniels' claim "that providers at the Philadelphia VAMC negligently performed a subtalar fusion surgery on Mr. Daniels' right foot, which required a revision surgery and caused Daniels to sustain damages." (ECF No. 25-18 at 2.) The VA concluded that there was no evidence of any negligent or wrongful act and denied Daniels' claim. (*Id.*)

Daniels has offered no expert to opine that Dr. Ugrinich breached the standard of care during the performance of the surgery. (ECF No. 25 ¶ 58.) Dr. Bernstein[3] testified that he is not opining that Dr. Ugrinich breached the standard of care by misplacing the screws or by using two

---

[3] The United States has moved to preclude Dr. Bernstein as an expert. (ECF No. 26.)

screws instead of one. (ECF No. 25-20 at 67:17–68:1.) Instead, Dr. Bernstein has offered an expert opinion that Dr. Ugrinich breached the standard of care *before* the surgery by failing to perform additional diagnostic tests and failing to offer additional conservative treatments. (*Id.* at 25:21–25; 66:9–14.) Dr. Bernstein also contends that Dr. Ugrinich breached the standard of care when she decided to perform the surgery because it was not medically necessary. (*Id.* at 65:19–22.)

The United States' expert, Dr. Paul Flanigan, opines that the subtalar joint fusion surgery was properly performed, and that a successful subtalar joint fusion surgery can properly include the use of two screws. (ECF No. 25 at ¶¶ 55–57.)

Following the denial of his administrative claim, Daniels filed his lawsuit in this Court. (ECF No. 1.) His Complaint asserts one count of medical negligence based on a list of twenty-two negligent acts, including "[i]mproperly performing the fusion of the right subtalar joint" and additional allegations related to negligence in the surgery. (*Id.* ¶ 25.) Daniels' list of negligent acts further includes, among others: "Failing to fully and completely inform plaintiff of the risks of surgery, such as Chronic regional Pain Syndrome (CRPS), and obtain informed consent"; "Performing surgery on a patient who was not a good surgical candidate in light of his diagnosis and other preexisting and underlying medical conditions"; "Failing to order or obtain a CAT / CT scan prior to surgery in order to fully develop a diagnosis and surgical plan"; and "Failing to fully and completely diagnose the condition and consider other possible conditions such as flat foot." (*Id.*)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict

4

for the non-movant party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the movant is the defendant, they have the burden of demonstrating the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

### III.  DISCUSSION

The United States argues on summary judgment that Daniels failed to exhaust his claim as it relates to his treatment prior to the surgery, including whether the surgery should have been performed. Rather, because his administrative claim only raised that his surgery was performed negligently, he only exhausted his claim as to the surgery being performed negligently. For the claim that Daniels has exhausted, the United States argues that Daniels has presented no evidence that the surgery fell below the standard of care, and thus there is no dispute of material fact and summary judgment should be granted.

A.      **Administrative Exhaustion of Claims**

The FTCA provides a limited waiver of the United States' sovereign immunity. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). Prior to filing a suit in federal court, the FTCA requires that a tort claim first be brought to the appropriate federal agency, and that agency must deny the claim in writing. *Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003). In requiring administrative presentment, Congress sought to provide agencies with an opportunity to investigate and encourage the settlement of meritorious claims. *See White-Squire*, 592 F.3d at 459; *Bialowas v. United States*, 443 F.2d 1047, 1050 (3d Cir. 1971) ("Though sovereign, the Government considerately provided [plaintiff] with convenient and expeditious machinery for settlement of his alleged damages and injuries."). The requirement to exhaust administrative claims is jurisdictional and cannot be waived—without it, the FTCA's limited waiver of sovereign immunity cannot be invoked.

A plaintiff cannot present one claim to the agency and then bring a lawsuit under the FTCA on the basis of a different set of facts. *Roma*, 344 F.3d at 362. "In other words, notice in the form of an administrative claim 'satisfies section 2675's requirement . . . If the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.'" *Id.* at 362–63 (quoting *Tucker v. U.S. Postal Serv.*, 676 F.2d 953, 959 (3d Cir. 1982)).

In *Roma*, the plaintiff's administrative claim alleged that he received negligent instructions to remove his respirator while fighting a fire. 344 F.3d at 358. When plaintiff brought his claim in federal court, he also alleged negligence in failing to prevent the fire. *Id.* at 363. The Third Circuit upheld the district court's determination that the plaintiff failed to exhaust his claim regarding negligence in preventing the fire because the facts concerning how the fire started are entirely

distinct from the conduct of supervising the firefighting, and thus, the plaintiff's administrative claim failed to provide notice to the United States that it had to investigate the start of the fire itself. *Id.*

In contrast, in *Muhammad v. United States*, 884 F. Supp. 2d 306 (E.D. Pa. 2012), the plaintiff's complaint differed from his administrative claim because it included additional theories of liability. The underlying facts involved an unlawful entry, search, and detention. *Id.* at 309–10. The court found that the claim was properly exhausted because the additional theories of liability—specifically, false imprisonment, assault, and battery claims because of the handcuffing of the plaintiff—stemmed from the same unlawful entry, search, and detention. *Id.* at 310–11. Similarly, in *Boyle v. United States*, 605 F. Supp. 3d 653 (E.D. Pa. 2022) the United States argued that the claim was not administratively exhausted to the extent it brought claims against employees other than two doctors specified in the administrative claim. The court found that the information in the administrative complaint provided the United States with sufficient opportunity to investigate which VA physicians were responsible for the alleged negligent conduct. *Id.* at 660.

Here, Daniels' administrative claim was clearly limited to the surgery itself. Specifically, he asserted the surgery was performed improperly because two misplaced screws were used rather than one. (ECF No. 25-7 at 2.) In his Complaint, Daniels alleges negligence well beyond the surgery itself, including whether the surgery should have been performed, whether informed consent was received,[4] and whether additional diagnostic testing should have been conducted. These allegations expand far beyond the administrative claim submitted to and denied by the United States.

---

[4] Indeed, Daniels agrees that "lack of informed consent claims involve an entirely separate nucleus of operative fact." (ECF No. 31 at 11.)

Similar to *Boyle*, Daniels' administrative claims did not name all, or the correct, VA physicians. Daniels' claim listed only a Dr. Marian Eunice, although the undisputed facts here show that Dr. Ugrinich performed the subtalar joint fusion surgery. The United States does not argue that Daniels' claim is not exhausted because it did not name Dr. Ugrinich. The administrative claim provided the United States with sufficient information to investigate the surgery, which revealed the correct name of the surgeon.

But Daniels seeks to pursue more than simply an additional or different VA physician. Instead, he has expanded the scope of facts from his administrative claim to include allegations of deviations from the standard of care before and after the surgery itself. Those allegations involve different facts from the surgery itself, which the United States was not given notice of in order to investigate the administrative claim.

Analyzing whether a surgery was performed wrongly as opposed to whether the wrong surgery was performed involves a different set of facts to consider and different applicable standards of care. For the United States to investigate the administrative claim of performing a surgery wrongly, it would have reviewed any records related to surgery itself and the relevant standard of care for subtalar joint fusion surgery. For the United States to investigate whether the wrong surgery was performed, it would need to review the diagnostic records and evaluate the standard of care for diagnosing and treating subtalar arthritis. The United States would not have had to analyze whether one screw or two screws was the appropriate standard for conducting this surgery to investigate whether the wrong surgery was performed.

Daniels did not present the United States with an administrative claim asserting that the wrong surgery was performed. The United States is not required to investigate a claim that is not presented to it. The only claim Daniels presented is whether the surgery was performed wrongly,

and thus, that is the only claim that has been exhausted, and the only claim over which this Court has jurisdiction.[5]

Daniels asserts that the proper recourse for failure to exhaust administrative remedies is a dismissal without prejudice. However, the FTCA requires claimants to present their claims to the appropriate agency "within two years after the claim accrues." 28 U.S.C. § 2401(b). Daniels' surgery occurred over four years ago, and none of the facts in this case show that Daniels has received treatment from the VA for his right foot in the past three years. Therefore, Daniels cannot exhaust this administrative claim and bring it back to federal court. *See D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 749 (3d Cir. 2020).

### B. Medical Malpractice Claim

As the only claim this Court has jurisdiction over is whether the subtalar joint fusion surgery was properly performed, the only remaining question is whether there is a genuine dispute of material fact as to whether the surgery was negligently conducted.

For a non-moving party to create a genuine dispute of material fact, they are required to point to evidence in the record. Fed. R. Civ. P. 56(c). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

---

[5] While Daniels asserts that there are genuine issues of material fact that preclude summary judgment as to this issue (ECF No. 31 at 13), he identifies no genuine issues of material facts relevant to the exhaustion of the administrative claim.

A plaintiff bringing a medical malpractice claim under Pennsylvania law[6] must show: (1) a duty owed to the patient by the physician; (2) a breach of that duty; (3) the breach was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the patient's damages were a direct result of that harm. *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003). Establishing the second factor nearly always requires medical expert testimony to establish the standard of care. *Id.*; *see Miville v. Abington Mem'l Hosp.*, 377 F. Supp. 2d 488, 491 n.2 (E.D. Pa. 2005) ("The only exception to the requirement of expert testimony in medical malpractice cases applies where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.") Because the performance of a subtalar joint fusion surgery is not within the range of experience or comprehension of a non-professional person, the standard of care for such a surgery requires expert testimony.

In response to United States' Statement of Material Fact that "Plaintiff has not proffered an expert to opine that Dr. Ugrinich breached the standard of care during the surgery" (ECF No. 25 ¶ 58), Daniels responded: "Denied" (ECF No. 29 ¶ 58). This response fails to meet the requirements of Rule 56(c)(1). Moreover, Daniels offered no facts in his statement of additional material facts that Dr. Ugrinich breached the standard of care during surgery. In his brief, Daniels states that Dr. Bernstein proffers the expert opinion that Dr. Ugrinich's care and treatment fell below the standard of care. However, Daniels does not point to any record supporting this assertion, focusing instead on Dr. Bernstein's other opinions regarding conduct prior to surgery,

---

[6] Under the FTCA, liability of the United States is determined by the law of the state where the allegedly tortious act occurred. 28 U.S.C. § 2674; *DeJesus v. U.S. Dept. of Veterans Affairs*, 479 F.3d 271, 279 (3d Cir. 2007). Daniels' subtalar joint fusion surgery occurred in Pennsylvania (ECF No. 25-17 at 2; ECF No. 25-18 at 2), and thus Pennsylvania law applies.

such as diagnosis and diagnostic testing. Daniels provides no response to Dr. Bernstein's deposition testimony that it is not his opinion that Dr. Ugrinich breached the standard of care during the subtalar fusion surgery. (ECF No. 25 ¶¶ 45–47.) Thus, it is undisputed that Daniels' purported expert to support that Dr. Ugrinich breached her duty by falling below the standard of care in performing the subtalar joint surgery has offered no such opinion.

Because Daniels has offered no evidence that Dr. Ugrinich breached the standard of care during the subtalar joint fusion surgery, his medical malpractice claim fails.

## IV.   CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Defendant on the Plaintiff's Complaint. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**